[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
Following a bench trial, appellant Lamont S. Mattan was convicted of aggravated menacing in violation of R.C. 2903.21. The trial court imposed a suspended sentence of 180 days and a $500 fine, of which $400 was suspended. It also placed Mattan on two years' probation.
On appeal, Mattan raises one assignment of error in which he contends that the trial court erred in finding him guilty. In support of his assignment, Mattan challenges both the sufficiency and the weight of the evidence.
Mattan lived across the street from Steve Peterson, Peterson's wife, Bernetta Jackson, and their two teen-aged children. One morning at approximately 6:30 a.m., while Peterson was leaving for work, Mattan stood in his yard, hollering racial slurs at Peterson. He made a gesture with his hands of shooting a rifle at Peterson and threatened to "kill [Peterson's] nigger ass" and to burn his house. Peterson testified that he took the threat seriously and was afraid. He told his wife, who was standing at the door observing the incident, to go inside and lock the door. (The previous night Peterson had called the police about harassment from Mattan, and, according to Peterson and Jackson, Mattan had, in other instances, made racially derogatory comments to their family and intimidated them. Getting threatened, however, was a "whole different situation.")
When Peterson arrived at work, he called his wife to determine if she was unharmed and called the chief of police in Colerain Township. When Peterson came home that evening, Jackson told him that Mattan had said that she "smelled like shit." Peterson called the police. Both Peterson and Jackson testified that they feared for the safety of their children.
Mattan testified that the relationship between his family and Peterson's deteriorated when Peterson's daughter called his son a "cracker." He denied threatening Peterson and stated that he left his house at 6:10 a.m. with his wife and his children to go to his mother's house. He denied seeing Peterson on the morning in question. Three neighbors testified on behalf of Mattan. Each denied hearing anything out of the ordinary on the morning the alleged threats were made. None of the neighbors, however, were outside of their houses when the threats were allegedly made.
On rebuttal, the state provided the testimony of another neighbor, who claimed that when he left his house at 6:10 a.m. he saw Mattan on the front lawn of Mattan's house with his children. Other testimony indicated that a "No Trespassing" sign appeared in Mattan's front yard sometime between the evening before the incident and the morning of the incident. Mattan testified that he put the sign in his yard.
To reverse a conviction based on insufficient evidence, we must determine, when reviewing the evidence in the light most favorable to the state, that no "rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[1] To reverse a conviction as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and make the determination that the trier of fact clearly lost its way and created a manifest miscarriage of justice so as to entitle the defendant to a new trial.[2]
To convict Mattan of aggravated menacing, the state had the burden of proving that Mattan knowingly caused Peterson to believe that Mattan would cause serious physical harm to Peterson, his immediate family, or his property.[3] In support of his argument, Mattan asserts that if Peterson believed his threats concerned serious physical harm, he would not have left his family unattended. This argument goes to the weight of the evidence, not its sufficiency. Construing the evidence in a light most favorable to the state, we conclude that there was sufficient proof of all the elements of aggravated menacing, including the element that Mattan caused Peterson to believe that he would carry out his threats to burn Peterson's home and to kill him.
In support of his challenge to the weight of the evidence, Mattan argues that he presented evidence that conflicted with that presented by the state. As Mattan recognizes, issues of credibility reside with the trier of fact, who is free to believe all, part or none of a witness's testimony.[4] Despite Mattan's denial that he made the threats and the neighbors' testimony that they did not hear the altercation, we do not disagree with the trial court's resolution of the conflicting testimony.[5] A reasonable factfinder could have concluded that Peterson's and Jackson's testimony was more credible than the testimony of Mattan's witnesses. Therefore, we overrule Mattan's assignment.
Therefore, we affirm the judgment of the trial court.
A certified copy of this Judgment Entry shall constitute the mandate, to be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
HILDEBRANDT, P.J., PAINTER and SUNDERMANN, JJ.
[1] See State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
[2] See State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720.
[3] See R.C. 2903.21(A).
[4] See State v. Antill (1964), 176 Ohio St. 61, 67,197 N.E.2d 548, 553.
[5] See State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, 547.