OPINION
{¶ 1} Larry Dean Greth is appealing the judgment of the Montgomery County Common Pleas Court which found him guilty of burglary among other felonies.
 {¶ 2} In October of 2000, Sherri Greth's husband, the defendant, packed his belongings and moved out of the house they shared in Miamisburg. In the early morning hours of November 11, 2000, Mr. Greth cut the screen on the front door of the couple's house in Miamisburg and let himself into the residence with a key, which Mrs. Greth did not know he had. She awoke and confronted her estranged husband. Mr. Greth beat her in the head and face badly with his fists, pulled a stolen shotgun from beneath the sofa, and then terrorized her over the course of the next seven hours. She eventually managed to convince him to leave by reminding him that if he killed her there would be no one to care for their daughter or their dog.
 {¶ 3} Mrs. Greath was terribly beaten with two blackened eyes and a jaw so sore she could barely open her mouth or speak. Additionally, Mr. Greth had hit her so hard that he had opened a wound on her head that required stitches. She was taken to the emergency room at Sycamore Medical Center, where she was admitted into the intensive care unit for overnight observation due to her head injury.
 {¶ 4} Mr. Greth spent the day calling on various friends and relatives; several of whom he told that he had hurt his wife very badly. When Mr. Greth appeared at his aunt's house around 10:00 a.m., he was carrying shotgun shells and what appeared to be a rifle. However, when he went to his brother-in-law's house in the early afternoon, he was only carrying the shotgun shells. The evidence at trial suggested that Mr. Greth arrived at his aunt's house carrying the gun in a sheet, that he left the sheet behind a shed at her house, and carried the gun with him as he left her house and walked off along the creek behind her house. Additionally, Mr. Greth told his brother-in-law that he had gotten the gun by kicking in the door of someone who was good to him and that he felt bad about that.
 {¶ 5} Mrs. Greath testified that after Mr. Greth assaulted her in the kitchen, he walked into the living room and pulled a shotgun out from under the couch. He told her that earlier in the day he had kicked in the door to Robert Key's house, who he knew to be a hunter, and took the gun and hid it under her couch. Additionally, he told her that he had gone twice to Wal-Mart to buy shotgun shells because the first box he bought were the wrong ones and he had to return to exchange them. Wal-Mart records and employees confirmed that a customer bought rifle slugs at approximately 7:20 p.m. that evening and returned to exchange them shortly thereafter, stating that he had bought the wrong ones.
 {¶ 6} Further, Mr. Key's house was broken into on November 10, 2000 and a shotgun was stolen. Officer Justin Small was dispatched to Mr. Key's house on a report of a door standing open. When Officer Small arrived, he observed that the door on the south side of the house had been pried open. Since no one was home at the time, Officer Small secured the door as best he could and left a note for the owner. On November 10, 2000, Mr. Key had been gone all day and did not return until dusk and originally did not notice anything out of the ordinary in his house. However, when his ex-wife called he began looking around and noticed that his back door had been kicked in and a Mossberg 410 shotgun was missing from his bedroom closet. Mr. Key then called to report the burglary.
 {¶ 7} In September of 2001, a jury found Mr. Greth guilty of burglary, felonious assault and abduction. Also, he was acquitted on three counts of rape and one count of aggravated burglary. The trial court sentenced Mr. Greth to five years of imprisonment on the burglary conviction, consecutive to five years for felonious assault, and concurrent with three years for abduction. Mr. Greth appeals his conviction for burglary.
 {¶ 8} Mr. Greth raises the following as his sole assignment of error:
 {¶ 9} "WHETHER DEFENDANT'S CONVICTION FOR BURGLARY WAS SUPPORTED BY THE MANIFEST WEIGHT OF THE SUFFICIENT EVIDENCE OR BEYOND REASONABLE DOUBT THAT THEREBY VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 1 SECTION 10 OF THE OHIO STATE CONSTITUTION."
 {¶ 10} Mr. Greth argues that the trial court erred in overruling his Crim. R. 29 motion for acquittal on the charge of burglary, stemming from the taking of Mr. Key's shotgun. We disagree.
 {¶ 11} Crim. R. 29(A) requires that a trial court enter a judgment of acquittal if the evidence is insufficient to sustain a conviction of an offense. However, the trial court need not grant the acquittal if the record demonstrates that "reasonable minds can reach different conclusions as to whether each material element of a crime was proven beyond a reasonable doubt." State v. Wolfe (1988), 51 Ohio App.3d 215,216. In reviewing a challenge to the sufficiency of the evidence, we must determine whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the state had proven the essential elements of the crime beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 273.
 {¶ 12} Mr. Greth asserts that the State did not present sufficient evidence that he was the individual who broke into Mr. Key's house and stole the gun. The State argued at trial that Mr. Greth committed burglary when he trespassed in Mr. Key's residence by force or stealth with the purpose to steal one of Mr. Key's guns.
 {¶ 13} The State presented the testimony of Officer Small, who was dispatched to Mr. Key's house on the report of a door standing open. (Tr. 544). Officer Small testified that the door on the south side of the house appeared to have been pried open by someone. (Tr. 545). Additionally, Mr. Key testified that when he returned home on November 10, 2000 he found that his back door had been kicked in and a Mossberg 410 shotgun was missing from his bedroom closet. (Tr. 420-421). Mr. Key further testified that he knew Mr. Greth and that Mr. Greth knew that Mr. Key was an avid hunter. (Tr. 422-423). Additionally, Mrs. Greath testified that her husband told her that he had obtained the gun by kicking in Mr. Key's door and taking it. (Tr. 203-204). Finally, Mr. Greth's brother-in-law testified that on November 11, 2000, Mr. Greth appeared at his house and told him that he had taken the gun from someone who had been good to him and that he kicked in the door to get it. (Tr. 457, 463, 465, 467). If this testimony was believed and viewed in a light most favorable to the prosecution, the evidence establishes that a gun was forcibly stolen from Mr. Key's home and that Mr. Greth was the person who did it. The State produced evidence on each element of the charge of burglary. Although Mr. Greth argues that the evidence was contradictory and that his wife was not worthy of belief, we find that the evidence was sufficient to withstand a Crim. R. 29 motion for acquittal. Mr. Greth's assignment of error is without merit and overruled.
 {¶ 14} The judgment of the trial court is affirmed.
WOLFF, P.J. and GRADY, J., concur.