THE STATE OF OHIO, APPELLEE, *v.* EBRIGHT, APPELLANT.

---

[1] See, also, clarifying amendments to Civ. R. 12(H), effective July 1, 1983.

(No. 82AP-1010—Decided
August 30, 1983.)

*Mr. Michael Miller,* prosecuting attorney, and *Ms. Karen L. Martin,* for appellee.

*Mr. William J. Fleck, Jr.,* for appellant Stephen Ralph Ebright.

NORRIS, J. Defendant appeals from his conviction on one count of receiving stolen property. The issues raised by the appeal are whether the conviction was necessarily and impermissibly grounded upon evidence which violated the "inference upon an inference rule" and circumstantial evidence which reasonably supports a theory of innocence.

Under the first count of the indictment, defendant was accused of selling, on October 19, 1981, silverware he knew to have been stolen from James Mayer, while the second count charged that he made a similar sale on December 5, 1981. The first count was dismissed by the trial court at the close of the state's case.

Mrs. Mayer testified that she had known defendant as her neighbor for three or four years; that she and her husband had hired defendant to perform carpentering, painting, and plumbing work on their home; that defendant had been in their home ten to twelve times between July 1981 and December 20, 1981 in order to perform work; that defendant was sometimes alone in their home when he worked; that she and her husband owned twelve place settings of Westmoreland silverware in the Milburn Rose pattern which she kept in a silver chest which she in turn stored under her bed; that she had last used her silverware on Thanksgiving Day 1981, when she took four place settings out of the chest and returned it to its place under her bed; that on that occasion she was rushed and did not inventory the silver and did not notice that anything was missing; that she did not return the four place settings to the silver chest; that on December 4, she and her husband discovered that their home had been broken into but did not find that anything was missing until the next day, or the day following, when they discovered the silver chest was gone; that the silverware had no distinctive markings except its pattern, although it was not a common make or pattern; and that, on February 26, 1982, they recovered from a silver dealer five place settings of silverware of their manufacture and pattern.

Employees of the silver dealer testified that they purchased seven pieces (six forks and one spoon) of Westmoreland silverware from defendant on October 19, 1981, and that, on December 5, 1981, they purchased from defendant the five place settings which were recovered by the Mayers. Their testimony was supported by cancelled checks and invoices made out to defendant, and by photographs of him taken when the silverware was purchased. One of the employees testified that Westmoreland silverware was "not really too common," and that his wife was the only person he knew who owned some, although of a different pattern.

No evidence was offered by defendant.

Defendant raises two assignments of error:

"1. The jury drew one inference from another inference in order to arrive at a finding of guilty and they therefore

ignored the Court's instructions when it charged on the nature of the evidence.

"2. That the judgment and finding by the trial Court is against the manifest weight of the evidence."

Because both assignments of error concern the sufficiency of the evidence adduced at trial, they will be considered together.

When a person is charged under R.C. 2913.51 with receiving stolen property, the essential elements to be proved by the state are that he received, retained, or disposed of the property of another, and that he knew or had reasonable cause to believe that the property had been obtained through the commission of a theft offense. As a practical matter, under the circumstances of this case, that means that the evidence was sufficient to convict defendant only if the state established beyond a reasonable doubt that the silverware sold by defendant belonged to the Mayers, and that he knew it was stolen because he had stolen it.

Obviously, the state's case on these points was necessarily based upon circumstantial evidence. There was no direct evidence — for example, serial numbers or other identifying marks — from which the jury could directly conclude that the silverware sold belonged to the Mayers. Such a conclusion necessarily rested upon drawing an inference from facts which would constitute only circumstantial evidence of that ownership. Nor was there direct evidence that the Mayers' silverware was stolen by defendant.

Defendant contends that the state's case rests upon an inference impermissibly drawn from another inference — that, from the discovery on December 5 or 6 that the silverware was missing, it can be inferred that the silverware was taken in the course of the December 4 break-in, but that it is impermissible for the state to draw from this inference the additional inference that the silverware sold by defendant on December 5 was the silverware stolen from the Mayers on December 4.

The extent of the Ohio rule against drawing an inference from another inference is amply stated in case law:

"An inference based solely and entirely upon another inference, unsupported by any additional fact or another inference from other facts, is an inference on an inference and may not be indulged in by a jury.

"An inference which is based in part upon another inference and in part upon facts is a parallel inference and, if reasonable, may be indulged in by a jury." *Hurt* v. *Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 329 [58 O.O. 119], paragraphs one and two of the syllabus.

"The only inferences of fact which the law recognizes are immediate inferences from facts proved, but a given state of facts may give rise to two or more inferences, and in such case one inference is not built upon another but each is drawn separately from the same facts." *McDougall* v. *Glenn Cartage Co.* (1959), 169 Ohio St. 522 [9 O.O.2d 12], paragraph two of the syllabus.

The principle underlying the rule is that, where an inference is based solely and entirely upon another inference, its foundation is so insecure that reliance upon the second inference would stretch credulity beyond its permissible bounds and result in an inferred fact which in reality is speculative, raising merely a conjecture or possibility.

Examples illustrating the basic rule in operation were utilized by the Supreme Court in its opinion in *McDougall* at pages 525-526:

"* * * For example, if a seasick passenger on a ship in mid-ocean was last seen standing by the rail and he then disappeared completely, the inference may properly be drawn that he fell overboard and was drowned, but the additional inference that he intentionally jumped overboard and committed suicide can not be indulged. However, if it is shown that the passenger was in desperate financial and domestic trouble, was visibly depressed

and had on several occasions threatened to do away with himself, then from such facts the inference can be drawn that he deliberately threw himself overboard and committed suicide. Again, if a pedestrian was observed walking along a road and he was found unconscious and injured at the side of the road immediately after the passing of an automobile, it may logically be inferred that such automobile struck him, but it can not be inferred further that the driver of the car was negligent."

The prohibited inference in each example was based solely and entirely upon a predicate inference and, as such, was speculative and of no probative value. However, in this case, we do not believe the inferred ultimate facts, which were necessary to the state's case, rest solely and entirely upon another inference.

As stated above, the first ultimate fact at issue which the state was required to prove was that the silverware sold by defendant on December 5 belonged to the Mayers. The existence of this fact reasonably can be inferred from a combination of facts, among them: the Mayers owned Westmoreland Milburn Rose pattern silverware, an uncommon kind of silverware; defendant had the opportunity to discover that they owned that silverware; their house was broken into on December 4; it was discovered on December 5 or 6 that their silverware was missing; on December 5, defendant sold Westmoreland Milburn Rose pattern silverware; the amount of silverware he sold did not exceed the amount that was missing from the Mayers' home; and there was no evidence that defendant obtained the silverware from another source. The inference of the ultimate fact — that the silverware sold by defendant belonged to the Mayers — is not dependent upon or drawn from another inference but, rather, can be drawn directly from the facts listed.

The other ultimate fact at issue and required to be proved by the state was that defendant knew the silverware was stolen. The circumstantial evidence which is relevant to the drawing of an inference of this ultimate fact includes: the Mayers having given no one permission to either take or dispose of their silverware; defendant having the opportunity to discover that the Mayers owned Westmoreland Milburn Rose pattern silverware; his having sold that kind of silverware on December 5; that brand of silverware having been uncommon; the Mayers' home having been broken into on December 4, and the Mayers having discovered on December 5 or 6 that their silverware was missing; eight place settings having been missing, five sold by defendant and recovered — each having two forks — and defendant having earlier sold six forks; and the amount of silverware defendant sold not having exceeded the amount the Mayers were missing. From the facts that there was a break-in on December 4 and that on December 5 or 6 it was discovered that the silverware was missing, and that no one had permission to remove it, it reasonably can be inferred that the silverware was stolen on December 4. From the inferred fact that it was stolen on December 4, *plus* the facts that defendant had the opportunity to know that the Mayers owned that kind of silverware, that the silverware defendant sold was of that same kind and was not a common brand, that the total number of forks he sold was the same number contained in eight place settings, and that he sold fewer pieces than the Mayers missed, it can be inferred that defendant took the silverware from the Mayers. This inference of the ultimate fact is not prohibited by the inference upon an inference rule since it is based partially upon another inference and partially upon facts independent of those supporting that other inference, and is therefore a parallel inference permitted by the rule found in paragraph two of the syllabus of *Hurt* v. *Charles J. Rogers Transp. Co., supra.*

Having concluded that the inferences were permitted, the question remains

whether they were adequate to support a conviction in a criminal case. If this were a civil case, the question would be whether or not the inferences drawn and relied upon were more probable than other inferences which might also have been drawn from the underlying facts. However, in a criminal case, the test for reliability to be applied to an inferred ultimate fact is more stringent. When a conviction is to be based upon inferences drawn from underlying facts (*i.e.,* circumstantial evidence), the inferences which support guilt must be so strong that they exclude the drawing from the same underlying facts of reasonable inferences which support innocence. See *State v. Kulig* (1974), 37 Ohio St. 2d 157 [66 O.O.2d 351]. An appellate court, then, must reverse a conviction based upon circumstantial evidence where the inferences supporting guilt are insufficient as a matter of law to enable a jury to exclude inferences which support a reasonable theory of innocence. *State v. Sorgee* (1978), 54 Ohio St. 2d 464 [8 O.O.3d 452]; *State v. Graven* (1978), 54 Ohio St. 2d 114 [8 O.O.3d 113]. However, the theory of innocence must be reasonable as opposed to merely possible. See *State v. Rose* (May 5, 1983), Franklin App. No. 82AP-736, unreported.

A determination of whether circumstantial evidence relied upon by the state is sufficient, as a matter of law, to exclude a reasonable theory of innocence, necessarily involves our weighing the evidence to a limited extent; we must ascertain whether reasonable minds could find only that the circumstantial evidence was consistent with guilt and that defendant's theory of innocence was therefore excluded. If the circumstantial evidence is as consistent with innocence as with guilt, then doubt must be resolved in favor of innocence. *State v. Kulig, supra,* at 160. Under those circumstances, where the circumstantial evidence is equally consistent with two reasonable but opposed theories, it is apparent that reasonable minds cannot find that the circumstantial evidence is consistent only with guilt and precludes a theory of innocence. On the other hand, if the circumstantial evidence is so supportive of the theory of guilt that the theory of innocence is not reasonable, then reasonable minds may conclude that the circumstantial evidence is consistent only with the theory of guilt and irreconcilable with any reasonable theory of innocence. See *State v. Sheppard* (1956), 165 Ohio St. 293 [59 O.O. 398]; *State v. Williams* (1976), 47 Ohio App. 2d 330 [1 O.O.3d 393].

Accordingly, we must re-examine the circumstantial evidence relied upon by the state to support its theory of guilt, to determine if those same facts would also permit the drawing of inferences which support a reasonable theory of innocence.

From the evidence that defendant sold silverware, standing by itself, it is probably reasonable to infer that defendant had the right to sell it, as opposed to inferring that he did not. But, when the fact of defendant selling silverware is combined with the rest of the circumstantial evidence relied upon by the state to support inferences consistent with a theory of guilt, including the absence of any evidence explaining how defendant lawfully obtained the silverware, that single inference from that single fact simply does not amount to a reasonable theory of innocence. Defendant introduced no evidence which would ground a theory of innocence; neither does he, on appeal, propose that a theory of innocence can be constructed upon the circumstantial evidence relied upon by the state. Instead, he simply argues that the state's circumstantial evidence is insufficient to support a conviction, and that evidence bearing on count one could not be relied upon to obtain a conviction on count two. We disagree with the latter argument, in that evidence which might go to prove guilt on count one could also be relevant to proving guilt on count two.

The trial court dismissed count one on

the reasoning that, since the sale which was the basis of that count occurred on October 19, and Mrs. Mayer did not notice anything missing when she used silverware from the chest in late November, and the break-in occurred on December 4, there was no evidence of the commission of a theft offense having occurred prior to the October 19 sale, and, therefore, proof of an element essential to the first count was lacking. One might argue that it can be inferred from Mrs. Mayer's not noticing any silver was missing, that it was in fact all there in late November and that, therefore, one could conclude that defendant sold other silver on October 19, and the silver sold on December 5 was from that same source. Although that might constitute a reasonable theory of innocence standing by itself, when the circumstantial evidence relied upon by the state to support guilt in the December 5 sale is considered, then the inferences to be drawn from all the circumstantial evidence which supports guilt simply overwhelm those scant inferences which may be drawn to support innocence, to the extent that any reasonable theory of innocence is thereby excluded.

Furthermore, a strict reading of *State v. Kulig, supra,* reveals that the limitation upon reliance on circumstantial evidence to support a criminal conviction applies only to the circumstantial evidence relied upon by the state to prove an element essential to its case. This, of course, makes good sense as the danger is that the inferences drawn from that circumstantial evidence may not rise to the degree of reliability that should support a criminal conviction. Therefore, the competing inferences (those supporting guilt, and those supporting innocence) that are to be examined are only those which may be drawn from the circumstantial evidence relied upon by the state.

The inferences which most logically may be drawn from the circumstantial evidence are those which are consistent with, and supportive of, the state's theory of guilt; by comparison, any theory of innocence is not a reasonable theory. Accordingly, we are unable to say that the circumstantial evidence is insufficient as a matter of law to enable the jury to exclude all reasonable theories of innocence.

We find that there is sufficient evidence in the record upon which reasonable minds could conclude that defendant was guilty of receiving stolen property.

The assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

WHITESIDE, P.J., and MCCORMAC, J., concur.