OPINION
This timely appeal arises from Appellant's conviction in the Jefferson County Court of Common Pleas on one count of attempted burglary. Appellant argues that the conviction was against the manifest weight of the evidence, that there were errors in the photo array used to identify him and that there were errors in the presentence investigation report. For the following reasons we reverse the judgment of the trial court and discharge the defendant.
In the early morning hours of April 2, 1998, the Toronto Police Department received a call that someone was attempting to break into a home at 813 Loretta Street in Toronto, Ohio. Approximately two minutes later, Toronto Police discovered Appellant walking on Franklin Street in Toronto. Officers took Appellant to the police station for questioning and also took his picture. No one identified Appellant as the person who attempted to break into the Loretta Street home. (Tr. p. 73). Appellant was wearing a maroon Washington Redskins cap and had a set of Ford car keys in his possession. At 4:15 a.m. Appellant was released and an officer drove him to an area known as the Pottery Addition four miles south of Toronto.
At 6:30 a.m. on April 2, 1998, Mrs. Lucille Miller was awakened by a noise outside her home off of S.R. 152 near Sugargrove, Ohio. Mrs. Miller's home is approximately three miles from Toronto. Mrs. Miller went into her kitchen to investigate the noise. Her windows were illuminated by electric candlelights which rested on each windowsill. She turned on the kitchen lights and approached the kitchen window. When she looked out the window she saw a man looking into the window. Upon discovery, the man fled. Mrs. Miller called a friend who then called the Jefferson County Sheriff's Department. Sometime later that day or possibly the next day Mrs. Miller noticed that the storm window outside of her kitchen window had been loosened. (Tr. p. 82).
At 6:45 a.m. on that day, Saline Township Police Chief Ken Hayes noticed a man with a maroon cap running from Mrs. Miller's yard. Chief Hayes saw the man get into a Ford Mustang or Escort which had a black "bra" covering the front of the car, tinted headlights and no front license plate. Chief Hayes was not aware that there had been a call about an intruder at Mrs. Miller's home just a few minutes earlier. He did not attempt to stop or question the man he saw in Mrs. Miller's yard, nor did he record the license number of the white Ford automobile.
During the course of the investigation, detectives from the Jefferson County Sheriff's Department prepared a photo array of six men, including a photo of Appellant, whose photo was somewhat larger than the other five pictures. (Tr. p. 121). The photo array was presented to Mrs. Miller on April 6, 1998, and she positively identified Appellant as the man she saw outside her kitchen window on April 2, 1998. (Tr. pp. 83, 88).
Also during the investigation, detectives located Appellant's car at his parent's house in Wheeling, West Virginia. The car was identified as a white Ford Mustang matching the description given by Chief Hayes. During a search of the car, police found a maroon Washington Redskins cap, a flashlight and a camera. (Tr. p. 130).
On April 8, 1998, Appellant was indicted by the Jefferson County Grand Jury on one count of attempted aggravated burglary in violation of R.C. § 2911.12(A)(1) and R.C. § 2923.02, a felony of the third degree.
On June 16, 1998, Appellant filed a motion to prevent Appellee from introducing evidence that Appellant was identified from a photo array. The motion was overruled immediately prior to trial on June 23, 1998. A jury found Appellant guilty of the sole count in the indictment. The court ordered a presentence investigation. On July 29, 1998, a sentencing hearing was held and Appellant was sentenced to four years of incarceration.
On August 11, 1998, Appellant filed this timely appeal. Appellant's first assignment of error states:
 "THE JURY VERDICT OF GUILTY FOR THE CRIME OF ATTEMPTED BURGLARY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE"
In order to reverse a judgment as being against the manifest weight of the evidence, we must first determine whether there was sufficient evidence to sustain the verdict.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387-388; State v. Layne
(March 1, 2000), Mahoning App. No. 97-C.A.-172, unreported. "[S]ufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally insufficient to support the jury verdict as a matter of law."
Thompkins, supra, at 386. When addressing a claim of insufficient evidence, a reviewing court must consider all probative evidence and the reasonable inferences to be drawn therefrom in a light most favorable to the prosecution to determine whether any rational trier of fact could have found all elements of the crime charged beyond a reasonable doubt.
State v. Filiaggi (1999), 86 Ohio St.3d 230, 247, citing State v.Jenks (1991), 61 Ohio St.3d 259, and State v. Eley (1978),56 Ohio St.2d 169, at syllabus.
Appellant was convicted of violating R.C. § 2923.02 which states:
 "(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.
"* * *
 "(E) Whoever violates this section is guilty of an attempt to commit an offense."
To commit criminal attempt, one must purposely do or fail to do anything that constitutes, "a substantial step in a course of conduct planned to culminate in his commission of the crime. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose."
State v. Woods (1976), 48 Ohio St.2d 127, paragraph one of syllabus, overruled in part on other grounds by State v. Downs (1977),51 Ohio St.2d 47, 52.
The attempted underlying crime of which Appellant was convicted was burglary, R.C. § 2911.12(A)(1), which states:
 "(A) No person by force, stealth or deception, shall * * *
 "(1) Trespass in an occupied structure * * * when another person other than an accomplice of the offender is present with purpose to commit in the structure * * * any criminal offense[.]"
In proving burglary, the state is not required to prove that the defendant actually committed a criminal offense inside the habitation.State v. Brooks (1995), 101 Ohio App.3d 260, 265. The state need only prove that the defendant had the purpose or intent to commit a criminal offense within the habitation. Id. The state is also required to prove such purpose or intent when prosecuting a case of attempted burglary, because "[a]n action is not criminally punishable as an attempt to commit a particular crime unless an accused had the intent to commit that crime." Youngstown v. Osso (1996), 115 Ohio App.3d 416, 418.
A jury is permitted to find that a defendant intended the natural, reasonable and probable consequences of his or her voluntary acts. Statev. Carter (1995), 72 Ohio St.3d 545, 554; Sandstrom v. Montanta (1979),442 U.S. 510, 517. Intent can be determined from surrounding facts and circumstances. State v. Johnson (1978), 56 Ohio St.2d 35, 38.
Although intent can be inferred from relevant circumstantial evidence, such an inference will not support a conviction if it is based on the mere stacking of inference upon inference. State v. Cowans (1999),87 Ohio St.3d 68, 78. A trier of fact may not rely on, "[a]n inference based entirely upon another inference, unsupported by any additional fact or another inference from other facts[.]" Hurt v. Charles S. RogersTransp. Co. (1955), 164 Ohio St. 329, paragraph one of syllabus; seealso, State v. Nichols (1996), 116 Ohio App.3d 759, 767; State v.Elright (1983), 11 Ohio App.3d 97, 99. A second inference may be drawn upon a previous inference if the second inference is based at least in part on additional facts. Hurt, supra, at paragraph two of syllabus.
Appellant argues that the evidence against him, at best, raises the inference that he loosened Mrs. Miller's kitchen storm window. Appellant argues that the jury was not permitted to make the further inference that he also intended to commit a crime inside Mrs. Miller's home. Absent such proof, he should have been acquitted of attempted burglary.
After a review of the record here, we must agree with Appellant's reasoning. There is some slight evidence from which to infer that it was Appellant who loosened the storm window. Mrs. Miller testified during direct examination at trial:
 "Q. At some point later in the day or maybe even the next day did you notice anything unusual about the storm window where that kitchen window was at?
"A. It's just loosened.
 "Q. Was that the condition prior to April 2nd of the window?
"A. No."
(Tr. p. 82).
She also testified on cross-examination:
"Q. You said the window itself was loosened?
"A. The storm.
 "Q. And that would be the outer window you are saying was loosened up.
"A. Yes sir.
 "Q. And you are sure that had not been done through any type of bad weather?
 "A. I think we'd have noticed — I would have noticed it before."
(Tr. pp. 90-91).
Mrs. Miller further testified that she did not see anyone opening or trying to open the window. (Tr. p. 91). The window was not examined for fingerprints or any other type of evidence linking Appellant to the fact that the window was loosened. (Tr. p. 135). From Mrs. Miller's testimony it is possible to infer that Appellant loosened the window. Any further inferences must be supported by additional facts.
The record does not provide any additional facts to support a finding that Appellant intended to commit a crime within Mrs. Miller's home. No criminal tools were found in Appellant's possession or in his vehicle. No fingerprint was taken or fingerprint analysis done to further link Appellant to the loosened window by Toronto police. The state never specified or alluded to any crime which Appellant supposedly intended to commit in Mrs. Miller's home. Although Appellant was stopped earlier in the morning of April 2, 1998, there is no evidence linking Appellant to a crime other than the fact that he was walking in Toronto at the time that the Toronto Police Department received a call about a possible breaking and entering. The entire body of evidence on the record concerning this prior incident consists of the following testimony from Patrolman Fogle:
"Q. What is State's Exhibit #4?
"A. Jason Taylor.
"Q. When and how did that photograph come about?
 "A. Came about that morning. April 2nd. I picked him up in our city walking around. We had a caller earlier on 813 Loretta someone was trying to break in this lady's garage. About two minutes later I caught this subject walking on Franklin Street in the City of Toronto.
"Q. And what's the relationship?
 "A. So, I took him to the station for questioning. We took his picture.
 "Q. No one identified him though as breaking into —
"A. No."
(Tr. p. 73).
There is nothing in Patrolman Fogle's testimony which could support an inference that Appellant intended to commit a crime within Mrs. Miller's home. Even if it may be permissible to infer that Appellant was involved in the alleged breaking and entering at 813 Loretta Street in Toronto, to further infer that Appellant therefore had the intent to commit a crime in Mrs. Miller's home would again involve a stacking of inferences unsupported by additional facts.
The burglary statute, R.C. § 2911.12, contains the separate crimes of burglary and lesser burglary. R.C. § 2911.12(A)(1)(4). Lesser burglary is worded almost identically to the prescription against burglary, except for eliminating the need for the state to prove, "purpose to commit in the structure * * * any criminal offense[.]" R.C. § 2911.12(A)(1). A criminal statute is to be construed strictly against the state. State v. Hill (1994), 70 Ohio St.3d 25, 31. If the legislature had intended that burglary have no additional evidentiary requirements than lesser burglary, we must look to the statute to find such legislative intent. Id. R.C. § 2911.12(C) provides that burglary is a felony of the first degree, while lesser burglary is a felony of the fourth degree. Burglary, including its mens rea requirement, has a much more severe penalty than lesser burglary. The increased severity is due solely to the additional mens rea element. The legislature could not have intended that the more severe penalty for burglary could be imposed on a defendant on the basis of the same proof required for lesser burglary. The same reasoning would apply to attempted burglary and attempted lesser burglary.
While we can see from the scant inferences provided how the prosecution and jury may have presumed or assumed intent, here, such assumption falls far short of this requisite proof. Appellee failed to provide sufficient evidence of an essential element of attempted burglary, namely, that Appellant had the intent to commit a further crime in Mrs. Miller's home. The burden in this was clearly on the State. Therefore, Appellant's first assignment of error has merit.
Based on our reversal of Appellant's conviction in the first assignment of error, we would ordinarily end our analysis here. However, Appellant's second assignment of error is connected to evidence produced against him at trial and should be addressed by this Court. Appellant's second assignment of error states:
 "THE ADMISSION OF THE VICTIM'S IDENTIFICATION OF APPELLANT FROM A PHOTO ARRAY DENIED APPELLANT DUE PROCESS OF LAW"
Appellant's sole argument in this assignment of error is that the photo array used by Mrs. Miller to identify him included a photo of him that was much larger than the others. Appellant's argument as to this matter is not persuasive.
There is no requirement that all pictures in a police photo array be of the same size or type. State v. Green (1990), 67 Ohio App.3d 72, 79. Convictions based on eyewitness identifications at trial following pretrial identification by photograph will be set aside only if the photographic identification procedure was so impermissibly suggestive so as to give rise to a very substantial likelihood of irreparable misidentification. State v. Perryman (1976), 49 Ohio St.2d 14, 22, vacated in part on other grounds subnom, Perryman v. Ohio (1978),438 U.S. 911, citing Simmons v. United States (1968), 390 U.S. 377, 384. However, even if the procedure was unnecessarily suggestive, the identification need not be suppressed if it is reliable under the totality of the circumstances. State v. Waddy (1992), 63 Ohio St.3d 424,438, citing Neil v. Biggers (1972), 409 U.S. 188, 199. Factors determining the degree of reliability include:
 "The opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."
 Neil v. Biggers, supra, at 199-200.
Nothing other than the fact that Appellant's photo is slightly larger indicates that the identification procedures were impermissibly suggestive. Mrs. Miller was not told that she would find Appellant's photo in the array. There was no evidence that the police exhibited a preference for the photo of Appellant. All the other photos in the array bear a fairly close resemblance to Appellant. Viewing the totality of the circumstances, the identification procedure was not so impermissibly suggestive as to create a very substantial likelihood of irreparable misidentification.
Addressing the reliability factors set out in Neil v. Biggers, the record shows that Mrs. Miller had a good opportunity to view Appellant from approximately two feet away. The kitchen window was lit by both a candle light and the overhead kitchen lights. She gave a description to police based on her direct observation. She then viewed the photo array only four days after the initial incident.
Under the circumstances, Appellant was not deprived of due process by the trial court's admission into evidence of the victim's identification of Appellant from the photo array.
Appellant's second assignment of error is without merit.
Appellant's third assignment of error states:
 "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT SENTENCED APPELLANT TO A FOUR YEAR PERIOD OF INCARCERATION AFTER IT WAS BROUGHT TO THE COURT'S ATTENTION THAT THE PRESENTENCE INVESTIGATION MAY BE INACCURATE AS TO APPELLANT'S PREVIOUS CRIMINAL RECORD."
Appellant states that at the time of sentencing, the trial court stated that the reason the court was imposing a four-year prison term was based on Appellant's previous record, the age of the victim, the impact on the victim and because the minimum sentence would demean the seriousness of the offense. However, in that we have found merit in Appellant's first assignment and must reverse his conviction on those grounds, this assignment of error is rendered moot.
Finding that Appellant's first assignment of error has merit, we reverse the judgment of the trial court and Appellant is hereby discharged. Appellant's second assignment of error is overruled and the third assignment of error is moot.
Vukovich, J., concurs, Donofrio, J., concurs.