[Cite as *State v. Bliss*, 2014-Ohio-4357.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 14AP-41 |
| v. | : | (C.P.C. No. 12CR-4804) |
| Erik D. Bliss, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 30, 2014

*Mike DeWine,* Attorney General, and *Sarah L. Leatherman,* for appellee.

*Peterson, Connors, Fergus & Peer, LLP,* and *Kevin R. Conners,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Defendant-appellant, Erik D. Bliss, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of fraud in violation of R.C. 2913.48, tampering with records in violation of R.C. 2913.42, and theft by deception in violation of R.C. 2913.02. For the reasons that follow, we affirm the judgment of the trial court.

A. Facts and Procedural History

{¶ 2} Appellant is a licensed chiropractor who has operated an office in the Cincinnati area since 1992. On September 25, 1996 and again on May 1, 1997, appellant executed a provider agreement with the Ohio Bureau of Workers' Compensation ("BWC"), which authorized appellant to treat patients insured by BWC. The agreement requires appellant to abide by the BWC Billing and Reimbursement Manual ("Manual"), and to bill BWC or a self-insuring employer for only those medical services he actually performs on

BWC patients that are medically necessary, cost effective, and related to the claimed or allowed condition.

{¶ 3} In 2006, BWC suspected appellant of fraudulent billing practices and undertook an investigation of appellant. BWC assigned Special Investigator and Fraud Analyst Lujuana Brooks to act as an undercover operative on the case. Brooks posed as a patient who sustained a lower back injury at work and who had been authorized to receive chiropractic treatments for her allowed lower back condition. BWC created a fictitious identity for Brooks, including a name, social security number, and a BWC form C-9 setting forth the allowed conditions in her claim.

{¶ 4} Brooks first presented to appellant for treatment on December 7, 2006. As part of her undercover story, Brooks told appellant she was pregnant so that appellant would not order x-rays. Brooks proceeded to record the December 7, 2006 appointment on both an audio recording device and a video recorder with audio capabilities. During the office visit, Brooks was met by an office assistant who escorted her to a room where Brooks laid on a roller bed for approximately three and one half minutes. The roller bed operated on a timer that automatically switched off after a few minutes. After Brooks finished the roller bed treatment, she was told to wait for appellant to summon her into another room for face-to-face treatment. The videotape shows that, on December 7, 2006, Brooks entered the examination room at the eight and one-half minute mark and exited at the nine and one-half minute mark for a total of one minute of treatment with appellant.

{¶ 5} Appellant's treatment notes for each of Brooks' 50 office visits with appellant were admitted into evidence. During appellant's trial, BWC played the videotape of 5 of the 50 recorded visits. The testimony shows that the information on the treatment notes formed the basis of appellant's bill for each visit. The evidence shows that in order to receive reimbursement from BWC, practitioners must use certain numerical identifiers, known as CPT codes, to identify each procedure or treatment modality performed on a BWC patient. State's exhibit No. 43 reveals that appellant billed BWC for the following services as a result of Brooks' December 7, 2006 office visit: mechanical traction, CPT code 98940; evaluation and management, CPT code 99213; therapeutic exercise, CPT code 97110; and electronic muscle stimulation ("EMS"), CPT code 97012. Brooks testified that appellant did not perform an evaluation and management, therapeutic activity, or EMS, as she understood BWC requirements for such treatments. According to Brooks,

appellant's bill to BWC for her December 7, 2006 office visit contains $98.82 of fraudulent charges.

{¶ 6}    Brooks continued to receive treatment periodically with appellant for the next 2 years, for a total of 50 visits. Brooks described 4 other visits in detail as the corresponding videotape was played for the trial judge. Each of the 4 visits described by Brooks and viewed by the trial court were similar in substance and duration to her first visit on December 7, 2006. Each visit began with a few minutes on the roller bed followed by a treatment session with appellant that lasted one or two minutes. At some of the visits, appellant applied a needleless acupuncture device to Brooks' earlobe while he massaged her back.

{¶ 7}    Brooks examined the bills appellant submitted for each of the 50 visits in order to determine whether appellant had actually performed the services for which he billed BWC. Using the same methodology she employed after her first office visit, Brooks documented a total of $3,625.10 of fraudulent charges out of $5,145.53 appellant billed to BWC. In addition to the undercover operation, BWC fraud analysts reviewed appellant's bills for a number of other BWC patients who received treatment from appellant during the relevant time period. After conducting interviews with nine of these patients and employing a methodology similar to that employed by Brooks, BWC analysts determined that appellant fraudulently billed BWC for an additional $7,441.12 in chiropractic services that he did not actually perform.

{¶ 8}    On September 20, 2012, a special Grand Jury in Franklin County indicted appellant on charges of fraud in violation of R.C. 2913.48, tampering with records in violation of R.C. 2913.42, and theft by deception in violation of R.C. 2913.02. Appellant waived his right to a jury trial, and his case was tried to the court. The trial judge found appellant guilty of all counts in the indictment. On December 18, 2013, the trial judge sentenced appellant to a term of five years probation and ordered appellant to pay restitution in the amount of $11,066.22, plus investigation costs of $71,367.22. Appellant filed a timely notice of appeal to this court on January 14, 2014.

## B. Assignments of Error

{¶ 9}    Appellant asserts the following as error:

> 1. Appellant asserts that the trial court erred in finding appellant/defendant Erik Bliss guilty because the manifest

weight of the evidence weighed heavily against conviction on all counts.

2. Appellant asserts that the trial court erred in denying a Criminal Rule 29(A) motion for a judgment of acquittal because the State failed to produce sufficient evidence of every element of every charge beyond a reasonable doubt.

## C. Standard of Review

{¶ 10} "Because a Crim.R. 29 motion questions the sufficiency of the evidence, '[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence.' " *State v. Walburg*, 10th Dist. No. 10AP-1087, 2011-Ohio-4762, ¶ 11, quoting *State v. Hernandez*, 10th Dist. No. 09AP-125, 2009-Ohio-5128, ¶ 6. Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). We examine the evidence in the light most favorable to the state and conclude whether any rational trier of fact could have found that the state proved, beyond a reasonable doubt, all of the essential elements of the crime. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 78; and *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396.

{¶ 11} In determining whether a conviction is based on sufficient evidence, an appellate court does not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *See Jenks*, paragraph two of the syllabus; *Thompkins* at 390 (Cook, J., concurring); *Yarbrough* at ¶ 79 (noting that courts do not evaluate witness credibility when reviewing a sufficiency of the evidence claim). We will not disturb the verdict unless we determine that reasonable minds could not arrive at the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001); *Jenks* at 273. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Thompkins* at 386.

{¶ 12} While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386. Under the manifest weight of the evidence standard, a reviewing court must ask the

following question: whose evidence is more persuasive - the state's or the defendant's? *Id.* at ¶ 25. Although there may be legally sufficient evidence to support a judgment, it may nevertheless be against the manifest weight of the evidence. *Thompkins* at 387; *see also State v. Robinson*, 162 Ohio St. 486 (1955) (although there is sufficient evidence to sustain a guilty verdict, a court of appeals has the authority to determine that such a verdict is against the weight of the evidence); *State v. Johnson*, 88 Ohio St.3d 95 (2000).

{¶ 13} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Wilson* at ¶ 25, quoting *Thompkins* at 387. In determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving any conflicts in the evidence, the jury clearly lost its way and thereby created such a manifest miscarriage of justice that the conviction must be reversed and a new trial must be ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 14} A conviction should be reversed on manifest weight grounds only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *Martin* at 175. Moreover, " 'it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.' " *State v. Brown*, 10th Dist. No. 02AP-11, 2002-Ohio-5345, ¶ 10, quoting *State v. Long*, 10th Dist. No. 96APA04-511 (Feb. 6, 1997).

 **D. Legal Analysis**

{¶ 15} For purposes of clarity, we will consider the assignments of error out of order. In his second assignment of error, appellant contends that BWC did not produce sufficient evidence to support his convictions. We disagree.

{¶ 16} R.C. 2913.48 defines workers' compensation fraud and states that "[n]o person, with purpose to defraud or knowing that the person is facilitating a fraud, shall * * * falsify * * * any record or document that is * * * necessary to establish the nature and validity of all goods and services for which reimbursement or payment was received or is requested from" BWC. R.C. 2913.02 defines theft and states that "[n]o person, with

purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception." Finally, R.C. 2913.42(A) defines the offense of tampering with records and states that "[n]o person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall * * * falsify" any record. A conviction under either R.C. 2913.02(B)(2) or 2913.48(B) requires proof that the value of goods or services stolen is $7,500 or more. We determine appellant's intent to commit those crimes from the surrounding facts and circumstances. *See State v. Brown*, 10th Dist. No. 10AP-1204, 2011-Ohio-4766, ¶ 29, citing *State v. Dillon*, 10th Dist. No. 05AP-679, 2006-Ohio-3312, ¶ 22.[1]

{¶ 17} In addition to the testimony of Special Investigator Brooks, the BWC presented the expert testimony of Dr. George Steven Baer. Dr. Baer received his doctorate in chiropractic medicine in 1978, and he has been practicing chiropractic medicine for 35 years. Dr. Baer is board-certified in forensic science with a specialization in chiropractic medicine, and he has obtained board specialties in both occupational health and the treatment of work-related injuries. Dr. Baer viewed each of the five videotaped office visits previously presented during Brooks' testimony, and he was asked to provide his opinion regarding the chiropractic services actually performed by appellant during each visit. Dr. Baer was then asked to compare his findings to the corresponding billing statements appellant submitted to BWC.

{¶ 18} Dr. Baer opined that appellant did not provide therapeutic services to Brooks on any of the five visits shown in the videotapes. He further testified that, while appellant billed for EMS and cryotherapy treatments on each visit, appellant did not actually perform any such treatments. Additionally, Dr. Baer testified that he did not observe appellant perform any of the lumbar stabilization exercises for which he billed BWC. In fact, the only charges Dr. Baer could verify for each visit were those corresponding to the use of the roller bed, which he identified as mechanical traction, CPT code 98940. Dr. Baer qualified his opinion by stating that mechanical traction typically lasts for 10 or 15 minutes, rather than 3 or 4.

---

[1] For purposes of each of the offenses for which appellant was convicted, the term " 'Deception' means knowingly deceiving another or causing another to be deceived by any false or misleading representation," and the term " 'Defraud' means to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." R.C. 2913.01(A) and (B).

{¶ 19} While Dr. Baer did observe appellant perform some manipulation of the lumbar spine during each of the five visits, he did not observe the "Gonstead adjustment" appellant listed on the treatment notes. Additionally, while Dr. Baer did observe some period of spinal manipulation in the videotapes, a great deal of that treatment provided by appellant focused on the thoracic and occipital regions of the spine, which are not included as part of the claim allowance.

{¶ 20} Dr. Baer testified that therapeutic activity, CPT code 97110, is a time-based treatment modality and that the Manual requires a minimum treatment time of 15 minutes for every billable unit. Dr. Baer acknowledged that appendix D to the Manual, issued in January 2008, permits a practitioner to receive partial reimbursement for time-based treatment modalities lasting less than 15 minutes when the practitioner employs the "52" modifier, signifying lesser treatment.

{¶ 21} According to Dr. Baer, the use of the 52 modifier is appropriate only when the practitioner applies a particular treatment modality for at least 8 minutes. He further specified that the 52 modifier must be justified by the practitioner with a written explanation for a treatment period of less than 15 minutes and a notation of the actual time the practitioner applied the particular treatment modality. According to Dr. Baer, the most common explanation for prematurely discontinuing a treatment modality is that the patient cannot tolerate the treatment for the required time period, either due to pain or weakness. Appellant's billing records reveal that, although he used the modifier in every instance where he billed for a time-based treatment modality of less than 15 minutes, he never included an explanation for the shorter time, nor did he indicate the number of minutes, or seconds, he applied the treatment modality. As Dr. Baer viewed the five office visits by investigator Brooks, he identified numerous time-based treatment modalities applied by appellant for just a matter of seconds. Yet appellant billed BWC for a treatment unit in each instance and received full reimbursement from BWC for each unit.

{¶ 22} Jean Stevens testified that she is employed by BWC in the medical policy department and that she is a registered health information technologist. According to Stevens, the complete Manual, including appendices, is available to BWC providers via the BWC website. Stevens explained that appendix D provides the guidelines for billing of time-based treatment modalities. According to Stevens, BWC borrowed from the Medicare regulations in formulating BWC's eight-minute rule. Stevens corroborated Dr.

Baer's understanding of the rule regarding time-based treatment modalities such as a therapeutic activity, CPT 97110.

{¶ 23} Stevens acknowledged that, under BWC billing and reimbursement rules that existed prior to November 2006, it was permissible for a provider to bill and receive reimbursement for a treatment modality of less than eight minutes. However, with the advent of the eight-minute rule set out in appendix D, providers were not to bill BWC for a time-based treatment modality of less than eight minutes. Stevens testified that beginning in 2006, BWC made efforts to publicize the new policy, including training seminars for providers and their employees, a publication known as a "provider update" that was mailed to all certified BWC providers in December 2006, and displaying all relevant information via the BWC website.

{¶ 24} In the opinion of the court, the testimony of Investigator Brooks and Dr. Baer alone, if believed, provides sufficient evidence to support a finding that appellant submitted fraudulent charges totaling $3,625.10.

{¶ 25} Appellant, however, argues that there is insufficient evidence to sustain convictions for fraud and theft, inasmuch as the evidence concerning his billing practices for other BWC patients is circumstantial in nature. Specifically, appellant contends that there is insufficient evidence to support a finding of either fraud or theft of goods or services valued at $7,500 or more. While we agree that the evidence against appellant in regard to the other nine BWC patients involved in this case is largely circumstantial, when such evidence is viewed in favor of BWC, it is clearly sufficient to prove appellant's guilt beyond a reasonable doubt.

{¶ 26} For example, patient Ken Wilson testified that, on each of his office visits, he would first receive either electronic stimulation by way of small padded electrodes placed on his back, or the office assistant would place him on the roller bed. He testified that he received adjustments from appellant, but he acknowledged that he did not perform any exercises in appellant's office. He estimated that he spent five to ten minutes with appellant on each office visit. Appellant's billing statements for each of Wilson's office visits reveal a charge for therapeutic exercises to develop strength and endurance, range of motion and flexibility, CPT code 97110, yet the treatment notes do not describe any such exercises. BWC paid appellant $39 on each occasion he claimed to have performed a therapeutic exercise, CPT code 97110.

{¶ 27} Patient Tammy Klump testified that she never performed any exercises at appellant's office even though appellant's billing records show that appellant billed BWC for such services after each of her appointments, using the 52 modifier. Klump stated that she never spent more than eight minutes with appellant on any of her office visits. Similarly, while patient Anthony Lind testified that the treatment provided to him by appellant "worked" for his back pain, he acknowledged that appellant never had him perform exercises in the office. Lind testified that the time he spent with appellant on each of his office visits was "[a]nywhere from five to ten minutes." (Tr. 273)

{¶ 28} Patient Darla Snider recalled that appellant gave her a handout with exercises she was to perform at home but she could not remember doing any stretching exercises in appellant's office on any of her office visits. Nevertheless, the treatment notes relative to her office visits contain the notation "did lumbar stabilization exercises for flexibility with the patient * * * did assisted stretching of the hamstrings, crunches and piriformis stretching." (State's exhibit No. 29.)

{¶ 29} Patient Brandon Snow recalled that appellant asked him to touch his toes during one office visit but he did not remember performing any other type of exercise at the office during his appointments. He recalled that his office visits lasted about five minutes, "sometimes longer." (Tr. 332.) Although Snow recalled receiving EMS treatments on each office visit, he did not state that he ever used the roller bed. However, appellant's billing records show that appellant billed BWC for mechanical traction, CPT code 9841, on seven occasions. Appellant frequently billed BWC for two other time-based modalities he allegedly performed on Snow: therapeutic exercise, CPT code 97110, on 39 occasions, and massage, CPT code 98943, on 34 occasions. Appellant employed the "59" modifier indicating a "Distinct Procedural Service," whenever he billed BWC.

{¶ 30} Patient Patricia Shelton testified that appellant showed her how to perform certain exercises at her home, but appellant did not have her perform any of those exercises in the office. Appellant billed BWC for lumbar stabilization exercises, with the 52 modifier, on each of her office visits. However, Shelton estimated that she spent no more than "five minutes or so" receiving treatment from appellant on each visit. (Tr. 288.)

{¶ 31} Patient Robert Sharp testified that, on each of his office visits, he would first receive either electronic stimulation on his back, or the office assistant would place him

on the roller bed for five to ten minutes. He would then see appellant, who would manipulate his back as he lay on an examination table while he also received needleless acupuncture to his earlobe. When asked how long he spent with appellant, Sharp stated "I guess an average of ten minutes." (Tr. 300.) He did testify that appellant had him lean forward and then back for "three or four minutes, five minutes maybe," as appellant put pressure on his back. (Tr. 301.) Sharp stated that appellant did not have him do this on every visit.

{¶ 32} Sharp's wife, Jacqueline Sharp, also sought treatment from appellant for a work-related back injury. She testified that she and her husband saw appellant for treatment every two weeks from 2006 to 2009. She stated that, during her typical visit, appellant would place her on an examination table and manipulate her back "to get it to quit hurting." (Tr. 309.) She remembered that appellant would also "pull on my legs down, you know, trying to pull it out of my back." (Tr. 309.) Although Sharp acknowledged that the treatment helped her for a couple of days, she estimated that her face-to-face treatment time with appellant lasted about a minute and a half on each office visit. Sharp did not receive any treatment from appellant on any of her 47 office visits other than the face-to-face treatment she described. Appellant, however, billed BWC for therapeutic exercise, CPT code 97110, and received reimbursement of $38.13 for each of Sharp's office visits. Appellant also billed BWC for chiropractic manipulative treatment for each visit, CPT code 98941, and he received reimbursement of $48.18 each time.

{¶ 33} Special Investigator Nathan Cummings testified that appellant's billing records for each of these patients showed a similar usage of the 52 modifier as he observed with appellant's treatment of Investigator Brooks. Given the duration of the office visits described by the BWC patients who he interviewed and who gave testimony in this matter, Cummings concluded that appellant could not have performed therapeutic exercises to develop strength and endurance, range of motion and flexibility for the minimum of eight minutes as required by BWC for reimbursement under CPT code 97110. Cummings reached the same conclusion with regard to the other time-based treatment modalities that appellant claimed to have performed, including chiropractic manipulative treatment, CPT code 98941, and massage, CPT code 98943. Cummings could not justify appellant's charges given the amount of time that these patients reportedly spent with him.

{¶ 34} The testimony of these witnesses, combined with the video and documentary evidence admitted at trial, if believed, establishes that appellant knowingly submitted false and fraudulent billing statements to BWC, with the purpose or intent to deceive BWC, and that he obtained reimbursement in an amount greater than $7,500 for chiropractic services he did not perform. Accordingly, we hold that sufficient evidence support's appellant's convictions and that the trial court did not err when it denied appellant's Crim.R. 29 motion for acquittal. Appellant's second assignment of error is overruled.

{¶ 35} In his first assignment of error, appellant contends that his convictions were against the manifest weight of the evidence. We disagree.

{¶ 36} Appellant presented the testimony of medical coding expert, Michael D. Miscoe, who reviewed appellant's treatment notes for each of the five office visits shown in the videotapes played for the court. Miscoe also reviewed BWC publications, including the Manual and appendix D. In Miscoe's opinion, when the Manual and appendix D are read together, they permit a practitioner to bill BWC for a time-based treatment modality lasting as little as a few seconds so long as the practitioner employs the 52 modifier with the appropriate CPT code. As Miscoe reviewed the five videotaped office visits during his trial testimony, he was able to find a justifiable reason for every code used by appellant on every corresponding billing statement, with the possible exception of cryotherapy. Miscoe was careful to qualify his opinion, however, by stating that the issue of proper coding and the issue of permissible reimbursement are separate and distinct. Miscoe believed that a practitioner's billing statement should reflect every modality or procedure performed on a patient, no matter the duration. In Miscoe's opinion, once the practitioner uses the 52 modifier to indicate lesser service, the burden shifts to BWC to determine whether reimbursement is appropriate.

{¶ 37} Appellant also called Kenneth Thomas as his expert in clinical chiropractic medicine. Although Dr. Thomas maintained a private chiropractic practice for eight years, he testified that he has been employed exclusively in academia since that time, and he no longer treats private patients. Dr. Thomas believed that the needleless acupuncture device used by appellant on Brooks' earlobe qualified as reimbursable EMS. In fact, he went so far as to opine that clipping the needleless acupuncture device to Brooks' blue jeans at the back of her knee qualified as an EMS treatment for her lumbar spine. He was also of the

opinion that a trigger-point manipulation of the trapezius area qualified as manual therapy for the lumbar spine. Thomas did acknowledge that his review of the videotape of Brooks' office visit on December 7, 2006, revealed no evidence of lumbar stabilization exercises for flexibility, no crunches, and no cryotherapy, even though appellant billed BWC for such services.

{¶ 38} Appellant argues that, accepting Miscoe's theory of coding and reimbursement, it is reasonable to conclude that appellant did not intentionally deceive BWC. Appellant argues that his "good faith" interpretation of BWC coding and reimbursement rules creates a reasonable hypothesis of innocence and that his convictions are against the manifest weight of the evidence. Appellant's theory of innocence is both legally and factually flawed.

{¶ 39} According to appellant, under Ohio law, when the state's case against defendant is based purely on circumstantial evidence, and the circumstantial evidence does not exclude a reasonable hypothesis of innocence, the weight of the evidence does not support a conviction. *State v. Elbright*, 11 Ohio App.3d 97 (10th Dist.1983). This is not the prevailing rule of law in Ohio. Under Ohio law, a defendant may be convicted solely on the basis of circumstantial evidence. *State v. Nicely*, 39 Ohio St.3d 147, 151 (1988). "Circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable." *Id.* In short, appellant's legal argument relies upon a statement of law which is no longer controlling in Ohio. *State v. Brown*, 10th Dist. No. 05AP-601, 2006-Ohio-2307, ¶ 11, citing *State v. Simon,* Lucas App. No. H-04-026, 2005-Ohio-3208.

{¶ 40} Moreover, the trial court, as the trier of fact in this case, was not required to accept appellant's interpretation of the relevant rules and regulations governing BWC providers, nor was the court required to believe Miscoe's impression of the modalities and procedures that he claims to have seen in the videotapes. Although Miscoe testified that he spent two years working in his father's chiropractic office, and he was qualified as an expert in medical coding, he is not a chiropractor. For similar reasons, the trial judge was not required to accept Dr. Thomas' opinion regarding the therapeutic value of the chiropractic services he claimed to have seen in the videotapes.

{¶ 41} Special Agent Cummings testified that he participated in the investigation of appellant, and that he helped Brooks prepare the case for prosecution. Based upon his

review of the invoices submitted by appellant for his treatment of Brooks, Cummings determined that appellant fraudulently billed BWC for $3,678.53 of chiropractic services he did not perform; approximately $50 more than the total calculated by Brooks.

{¶ 42} During his testimony, Cummings related that a previous BWC audit of appellant's billing practices in the years 1995 through 1997 had resulted in an administrative determination of liability in the total sum of $28,343. With respect to the instant investigation, Cummings reviewed patient records obtained from the managed care organization that processed appellant's BWC invoices. Cummings reviewed the invoices submitted by appellant for the other BWC patients who testified in this matter, and he contacted each of those patients in the course of the investigation. His fraud investigation focused primarily on appellant's billing practices for these patients relative to CPT code 97110. According to Cummings, appellant consistently billed BWC for therapeutic exercises that none of the patients could recall performing in appellant's office. Cummings testified that the total fraud relative to each of the BWC patients who testified in this matter is, as follows: $1,163.14 for Klump; $533.82 for Lind; $4,104.75 for Jacqueline Sharp; $1,863.37 for Robert Sharp; $1,067.64 for Snider; $2720.68 for Snow; and $1,955.68 for Wilson. (State's exhibit No. 55.)[2]

{¶ 43} With regard to the fraudulent charges for therapeutic exercise, appellant claims that he performed a piriformis stretch on Brooks in each of her office visits and that his treatment for many of the other BWC patients included a piriformis stretch. Appellant further claims that even Dr. Baer acknowledged that a piriformis stretch is a recognized treatment modality. According to appellant, this activity satisfies CPT code 97110, even though he only performed the activity for a matter of seconds.

{¶ 44} However, even if the trial court believed that a piriformis stretch qualified as a therapeutic exercise to develop strength and endurance, range of motion and flexibility for purposes of CPT code 97110, the success of appellant's theory of innocence depends upon the trial court's acceptance of a patently unreasonable interpretation of the Manual and appendix D. Specifically, that such a treatment modality is reimbursable if it is performed for less than eight minutes. The testimony establishes that appellant performed the piriformis stretch on Brooks for a matter of seconds. Moreover, even if the

---

[2] Although State's exhibit No. 55 lists $1,982.76 of fraudulent charges for BWC patient Andrew Gilfillen, we note that Gilfillen did not testify in this matter.

court accepted appellant's interpretation of the Manual and appendix D, Dr. Baer testified that the use of the 52 modifier requires both an explanation of the reason for the lesser service and an indication of the actual time spent performing the treatment modality. Otherwise, reimbursement is inappropriate. Appellant did not provide the required information when he employed the 52 modifier in any instance.

{¶ 45} Appellant also argues that none of the BWC patients who testified in this matter is competent to provide an opinion as to whether they actually performed therapeutic exercises, as the term is defined in chiropractic medicine. Appellant makes the same argument relative to the other treatment modalities and procedures that BWC identifies as fraudulent. While we agree that none of the witnesses who gave testimony in this matter is competent to render opinions regarding specific chiropractic procedures, each witness is clearly competent to describe the events that took place in appellant's examination room, as well as the amount of time they received treatment from appellant on each of their office visits. When this testimony is combined with the other testimonial and documentary evidence offered by the State, such evidence weighs heavily in favor of appellant's guilt of both fraud and theft of goods or services valued at $7,500 or more.

{¶ 46} We recognize that "[m]istake of fact is widely recognized as a defense to specific intent crimes such as theft since, when the defendant has an honest purpose, such a purpose provides an excuse for an act that would otherwise be deemed criminal." *State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 64, citing *State v. Cooper*, 10th Dist. No. 09AP-511, 2009-Ohio-6275, ¶ 9. However, it was within the province of the trial court, as the trier of fact, to determine whether appellant had an honest purpose, and whether such a purpose provided appellant with an excuse for billing practices that would otherwise be deemed criminal. *Id.* It is clear from the trial court's decision convicting appellant of all charges that the trial court did not believe that appellant acted with an honest purpose. The weight of the evidence supports the trial court's decision.

{¶ 47} In short, the greater weight of the evidence establishes, beyond a reasonable doubt, that appellant knowingly billed BWC for services he did not perform with the intent to deceive BWC. The weight of the evidence further establishes, beyond a reasonable doubt, that the reimbursement appellant fraudulently obtained from BWC is valued at $7,500 or more. Accordingly, appellant's convictions of fraud, tampering with

records and theft by deception are not against the manifest weight of the evidence. Therefore, appellant's first assignment of error is overruled.

{¶ 48} For the foregoing reasons, having overruled both of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and O'GRADY, JJ., concur.

_____