[Cite as *State v. Laney*, 2023-Ohio-1058.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2022 CA 0044 |
| JEFFREY LANEY | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDINGS:    Appeal from the Richland County Court of
                             Common Pleas, Case No. 2022-CR-0160


JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      March 30, 2023


APPEARANCES:


For Plaintiff-Appellee                For Defendant-Appellant

GARY BISHOP                           MATTHEW J. MALONE
Prosecuting Attorney                  10 East Main Street
Richland County, Ohio                 Ashland, Ohio 44805

TERI BURNSIDE
Assistant Prosecuting Attorney
38 South Park Street, Second Floor
Mansfield, Ohio 44902

*Hoffman, P.J.*

{¶1} Defendant-appellant Jeffrey A. Laney appeals his conviction and sentence entered by the Richland County Court of Common Pleas, on one count of domestic violence, following a jury trial.  Plaintiff-appellee is the state of Ohio.

## STATEMENT OF THE CASE AND FACTS

{¶2} On February 24, 2022, a complaint was issued in the Mansfield Municipal Court, charging Appellant with domestic violence, in violation of Mansfield Codified Ord. 537.14(A), a misdemeanor of the first degree; and assault, in violation of Mansfield Codified Ord. 537.03(A), a misdemeanor of the first degree.  On February 25, 2022, a Complaint Charging Offense was filed, alleging, at the time of the instant offense, Appellant was in violation of R.C. 2919.25(A), a felony of the fourth degree, as he previously had been convicted more than once of domestic violence or a violation of section 2903.14, 2909.06, 2909.07, 2911.12, 2911.211, or 2919.22 of the Ohio Revised Code.  Via Judgment Entry filed March 3, 2022, the trial court ordered Appellant be bound over to the Richland County Court of Common Pleas.

{¶3} On April 21, 2022, the Richland County Grand Jury indicted Appellant on one count of domestic violence, in violation of R.C. 2919.25(A), a felony of the fourth degree.  Appellant appeared before the trial court for arraignment on April 29, 2022, and entered a plea of not guilty to the charge.

{¶4} Prior to trial, the state asked the trial court to issue a material witness warrant to secure the appearance of Ashley Nickelson ("Nickelson"), the victim.  Via Judgment Entry filed May 27, 2022, the trial court ordered Nickelson to enter a

recognizance with sufficient surety to guarantee her appearance and testimony at Appellant's trial. The trial court further ordered the Richland County Sheriff's Office to immediately effect service of the order on Nickelson. Nickelson was served on June 1, 2022.

{¶5} The matter proceeded to jury trial on June 2, and 3, 2022. The following evidence was adduced at trial:

{¶6} Nickelson testified she has known Appellant since she was three (3) years old. Nickelson explained she met Appellant when her father and Appellant's mother "got together." Transcript of Proceedings, Vol. II, June 2, 2022, at p. 40. Nickelson and Appellant began dating when she was twelve (12) years old and had dated on and off for twenty (20) years. Nickelson stated, in the five (5) years preceding February 23, 2022, she and Appellant were in an intimate relationship and had lived together.

{¶7} During the five (5) years preceding February 23, 2022, during which she and Appellant were together, Nickelson received social security income, and Appellant worked off and on for one of his friends. Nickelson indicated she "paid for everything * * * I paid all the bills." *Id.* at 45. Nickelson added Appellant always made sure she had something to eat. She and Appellant both received food stamps and shared the expense of purchasing groceries. Appellant had purchased clothing for Nickelson. Appellant made sure Nickelson had any medication she needed and reminded her of her doctor's appointments.

{¶8} Nickelson recalled she and Appellant were homeless on February 23, 2022, and had been homeless for "[a]lmost a whole year." *Id.* at 47. On February 23, 2022, she and Appellant were staying at a house at 339 Mulberry, Mansfield, Ohio. Nickelson

was awakened by Appellant screaming and yelling at her, repeatedly calling her "a bitch." *Id.* at 49. While Nickelson was sitting on the floor, Appellant kicked her in the face with his steel-toed shoes. Appellant hit Nickelson multiple times in the face and choked her to the point she almost passed out. Appellant then held a knife to Nickelson's throat. As Nickelson tried to leave the residence, Appellant grabbed her by the neck. Appellant let go of Nickelson when he thought he heard the police arrive. Nickelson exited the house and proceeded to her father's residence which was close by. Appellant followed her. Nickelson sustained bruises and abrasions to her neck and face.

{¶9} Upon her father's urging, Nickelson filed a police report. She spent the next month in a domestic violence shelter. Nickelson admitted she went to the jail to see Appellant two or three times. Nickelson explained she would stand outside the facility and Appellant would hold up notes to the window. The notes instructed her to drop the charges against him. Nickelson also communicated with Appellant through a messaging system for inmates. In these communications, Nickelson told Appellant she missed him, she loved him, and could not wait until he was home. On cross-examination, Nickelson acknowledged she will always love Appellant and he is still her best friend.

{¶10} John Nickelson, Nickelson's father, testified he was returning to his home on February 23, 2022, when he saw Nickelson walking up the street. John stopped her and, upon seeing her face, asked what happened. John described Nickelson as "distraught to the point where she was almost crying." Tr. Vol. III, June 3, 2022, at 110. Nickelson told John Appellant "had beat the hell out of her again." *Id.* John took Nickelson to Job and Family Services, as he had to drop off papers to the agency and

knew there was an officer at the Jobs Plus building. Nickelson gave a statement to a police officer. Thereafter, John took Nickelson to a domestic violence shelter.

{¶11} Mansfield Police Officer Joshua Frech was dispatched to Job and Family Services after Detective Butler, who was working an off-duty detail at the Job and Family Services building, requested a patrol officer. After Det. Butler provided Officer Frech with the details of the situation, Officer Frech interviewed Nickelson. The officer photographed Nickelson's injuries. Nickelson completed an affidavit as part of a domestic violence packet provided to victims by the Mansfield Police. Officer Frech requested Officer Underwood try to locate Appellant. Officer Underwood subsequently located Appellant and arrested him.

{¶12} Mansfield Police Officer Heath Underwood testified he checked three addresses in his attempt to locate Appellant. Officer Underwood eventually found Appellant at a fourth location. The officer placed Appellant under arrest, transported him to jail, and read him his Miranda Rights. When Appellant spoke with Officer Underwood, he tried to explain away Nickelson's injuries, stating Nickelson sustained the injuries as the result of a fall on the ice. On cross-examination, Officer Underwood confirmed Appellant did not admit to harming Nickelson. Appellant told Officer Underwood he never placed a hand on Nickelson.

{¶13} Kristin Gillis, a retired sergeant from the Richland County Jail, testified she worked the first shift in the control booth, which was across from where Appellant was housed on the second floor of the jail. On May 10, 2022, Gillis received a call from Captain Blunk, advising her a female was outside the building communicating with an inmate through the windows. Gillis looked up and observed Appellant standing by the

window of his housing unit.  Gillis confronted Appellant and confiscated the note he had in his hand.  The note instructed, "To drop the charges and let me out of jail.  Make sure you sign it, too, and date it.  Tell him [Appellant's attorney] I didn't touch you or do anything to you."  *Id*. at 139.

{¶14} Appellant testified on his own behalf.  Appellant denied ever living with Nickelson.  Appellant recalled Nickelson contacted him on February 22, 2022, and told him "she was at Lida Street and people had attempted to beat her up and drug her or lock her up."  *Id*. at 150.  Nickelson informed Appellant she was going to her father's house, but the people would not allow her to leave.  Nickelson asked Appellant to come get her.  When he arrived in the area, Appellant contacted Nickelson and told her he would meet her at the dollar store.  Appellant indicted it was around 1:00 a.m. on February 23, 2022.  Appellant located Nickelson running down the alley near the dollar store.  Appellant described Nickelson as "distraught and distressed."  *Id*. at 152.  Nickelson had a bruise on the side of her face and what appeared to be scratch marks on her face.  Nickelson refused to go to the hospital and did not want to go back to Lida Street.

{¶15} On cross-examination, Appellant insisted Nickelson was lying when she testified the two of them had lived together.  Appellant added John Nickelson committed perjury when he testified Nickelson and Appellant lived together.  When asked why John Nickelson would lie, Appellant responded, "Because he has an issue with me."  *Id*. at 183.  When asked what would motivate Nickelson to lie, Appellant replied, "Her father. * * * Being out there and being able to make a reason for me to get in trouble."  *Id*.

{¶16} After hearing all the evidence and deliberations, the jury found Appellant guilty as charged.  Appellant appeared before the trial court for sentencing on June 7,

2022.  The trial court imposed a sentence of 36 months in the Ohio State prison system with a mandatory three (3) years of post-release control.  Appellant received 104 days of jail time credit.  The trial court ordered Appellant to pay court costs and fees.

{¶17}  It is from this conviction and sentence Appellant appeals, raising as his sole assignment of error:

APPELLANT'S CONVICTION FOR DOMESTIC VIOLENCE WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

I

{¶18}  An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶19}  Appellant was convicted of domestic violence, in violation of R.C. 2929.25(A), which provides:

No person shall knowingly cause or attempt to cause physical harm to a family or household member.

**{¶20}** Appellant contends the state failed to present sufficient evidence to establish he and the victim were family or household members.  We disagree.

**{¶21}** R.C. 2929.25(F), which defines the term "family or household member," provides, in relevant part:

> (F) As used in this section and sections 2919.251 and 2919.26 of the Revised Code:
>
> "Family or household member" means any of the following:
>
> Any of the following who is residing or has resided with the offender:
>
> A spouse, a person living as a spouse, or a former spouse of the offender
>
> * *
>
> "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.

**{¶22}** In *State v. Williams,* 79 Ohio St.3d 459, 683 N.E.2d 1126 (1997), the Ohio Supreme Court addressed the definition of "cohabitation" as follows:

> [W]e conclude that the essential elements of "cohabitation" are (1) sharing of familial or financial responsibilities and (2) consortium. R.C.

2919.25(E)(2) and related statutes. Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations. These factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact.

*State v. Williams,* 79 Ohio St.3d 459, 465, 683 N.E.2d 1126.

**{¶23}** We find sufficient evidence exists Nickelson and Appellant were family or household members at the time of the offense.  Nickelson testified, in the five (5) years preceding February 23, 2022, she and Appellant were in an intimate relationship and had lived together.  She received social security income, and Appellant worked off and on for one of his friends.  Nickelson stated she paid all the bills, but added Appellant always made sure she had something to eat and had purchased clothes for her.  She and Appellant both received food stamps and shared the expense of purchasing groceries.  Appellant made sure Nickelson had any medication she needed and reminded her of her doctor's appointments.  During his testimony, Appellant denied he and Nickelson had ever resided together.

**{¶24}** The jury was free to accept or reject any or all of the evidence offered by the parties and assess the witnesses' credibility. Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. McGregor*, 5th

Dist. Ashland No. 15-COA-023, 2016-Ohio-3082, 2016 WL 2942992. The jury clearly believed the testimony of Nickelson, over Appellant's testimony.

{¶25} Based upon the foregoing and the entire record in this matter, we find Appellant's conviction was based upon sufficient evidence.

{¶26} Appellant's sole assignment of error is overruled.

{¶27} The judgment of the Richland County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Delaney, J. and

Baldwin, J. concur